IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LOUISE A. TOULIATOS, ) | |
| ) | |
|    Petitioner, ) | Case No. CV 06-354-N-LMB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM DECISION** |
| COMMISSIONER, SOCIAL SECURITY ) | **AND ORDER** |
| ADMINISTRATION, ) | |
| ) | |
|    Respondent. ) | |
| _____) | |

Currently pending before the Court is Louise A. Touliatos' Petition for Review, seeking review of the Social Security Administration's decision to deny her claim for Title II Social Security disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

**I.**

**ADMINISTRATIVE PROCEEDINGS**

On January 13, 2004, Louise A. Touliatos ("Petitioner") applied for Title II Social Security disability benefits. (AR 39-41). Petitioner's application was denied. (AR 24-26). Following reconsideration, Petitioner's application was again denied. (AR 28-32). Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 33). ALJ Paul Gaughen held a hearing on April 26, 2006 at which time Petitioner appeared and testified, represented by counsel. (AR 210-237).

**MEMORANDUM DECISION AND ORDER - 1**

On June 9, 2006, the ALJ issued a decision denying Petitioner's claim. (AR 10-16). Specifically, the ALJ found that Petitioner was not under a "disability" within the meaning of the Social Security Act. (AR 16). Petitioner timely requested review by the Appeals Council on June 23, 2006. (AR 7). On August 2, 2006, the Appeals Council denied Petitioner's Request for Review of Hearing Decision/Order (AR 4-6), making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely filed the instant action. Relative to this proceeding, Petitioner argues: (1) the medical evidence demonstrates her herniated lumbar disc is at listing level; (2) the ALJ failed to follow SSR-83-20 in determining her onset date; and (3) the ALJ did not consider her testimony concerning her alleged chronic pain. Pet.'s Brief, pp. 3, 6, & 8 (Docket No. 13). Petitioner therefore requests that the ALJ's decision be reversed and/or remanded to allow the ALJ an opportunity to further evaluate the evidence.

## II.

### STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process. 20 C.F.R. §§ 404.1520, 416.920 (2005). The second part of that process involves a determination regarding whether the claimant has a "severe impairment." 20 C.F.R. § 416.905(a) (2006). If no "severe" impairment is found, the claimant will be found not to be disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

**MEMORANDUM DECISION AND ORDER - 2**

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards. 42 U.S.C. § 405(g) (2005); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the

**MEMORANDUM DECISION AND ORDER - 3**

evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).  Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases."  *Id*. at 1095 (citation omitted).

The issue presented in the instant appeal is whether the ALJ's findings (and, later, the Appeals Council's findings) that Petitioner was not disabled is supported by substantial evidence, based on the application of proper legal standards.

### III.

### DISCUSSION

**A.   Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997).

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  If the answer is in the

**MEMORANDUM DECISION AND ORDER - 4**

affirmative, disability benefits are denied. 20 C.F.R. § 404.1520(b). In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity at any time relevant to the underlying inquiry. (AR 12).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the answer is in the negative, disability benefits are denied. 20 C.F.R. § 404.1520(c). Here, the ALJ found that Petitioner's "spinal impairment" is to be considered "severe" under the applicable regulations. (AR 12). Moreover, the ALJ noted that Petitioner's medical records do not support a finding of a severe mental impairment during the insured period. (AR 13).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the answer is in the affirmative, the claimant is disabled and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). In this respect, the ALJ concluded that Petitioner did not have an impairment or combination of impairments that met or medically equaled, either singly or in combination, the criteria established for any of the qualifying impairments. (AR 13).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In this regard, the ALJ concluded that Petitioner has the following residual functional capacity to perform a full range of sedentary work: she can lift up to ten (10) pounds; she can frequently lift or carry small articles; she can sit approximately six (6) hours in an eight (8)-hour workday; and she can walk or stand two (2) hours in an eight (8)-

hour workday. *Id*. The ALJ also pointed out that Petitioner cannot do a significant amount of stooping. *Id*. Finally, the ALJ recognized that, due to Petitioner's physical impairment, Petitioner was unable to perform any of her past relevant work. (AR 15).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his/her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). In this respect, the ALJ found that Petitioner has the residual functional capacity to perform a range of sedentary work that exists in significant numbers in the national economy. (AR 15 & 16). Therefore, based on the Petitioner's age, education, and work experience through the date last insured, the ALJ concluded that Petitioner was not under a disability as defined in the Social Security Act at any time through the date of the June 9, 2006 decision. (AR 16).

**B.     Analysis**

Petitioner challenges the ALJ's denial of disability benefits in three separate respects. First, Petitioner argues that, contrary to the ALJ's findings, the medical evidence demonstrates a covered disability. Pet.'s Brief, p. 3 (Docket No. 13). Second, Petitioner argues that the ALJ failed to follow SSR-83-20 in determining the onset date of her disability. *Id*. at p. 6. Finally, Petitioner argues that the ALJ did not properly consider her own testimony regarding her chronic pain. *Id*. at p. 8.

///

///

**MEMORANDUM DECISION AND ORDER - 6**

1.      <u>Whether Petitioner Had a Listed Impairment Through the Date Last Insured</u>[1]

The ALJ concluded that Petitioner's back impairment did not reach a disabling level prior to her date last insured.  (AR 15 & 16).  Understandably, Petitioner takes issue with this finding, concurrently pointing to various instances in the record where her treating physicians comment on the alleged severity of her herniated lumbar disc and chronic pain.  Pet.'s Brief, p. 4 (Docket No. 13).

The Ninth Circuit has held that a treating physician's medical opinion is entitled to special consideration and weight.  *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  The treating physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the individual."  *Id*.  However, a "treating physician's opinion on the ultimate issue of disability is not necessarily conclusive."  *Id*. at 762 (citations omitted).  The treating physician's opinion may be disregarded by the ALJ if he sets forth "specific, legitimate, reasons for doing so," as long as the decision is based on "substantial evidence," and the reasons for rejecting an uncontradicted physician's opinions are "clear and convincing."  *Id*. (citations omitted).  A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinion is a sufficient reason for rejecting that opinion.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Here, the ALJ is not so much rejecting Petitioner's treating physicians' opinions; instead, he is examining the balance of their opinions over the duration of their respective treatments of

---

[1] As Petitioner points out, she is only insured for Title II Social Security disability benefits through December 31, 2002.  Pet.'s Brief, p. 3 (Docket No. 13).  Thus, in order to prevail, Petitioner must establish she was disabled on or before the date last insured, December 31, 2002.  *Id*.

**MEMORANDUM DECISION AND ORDER - 7**

Petitioner. As Petitioner points out, a February 2000 MRI indicated that she suffered from a herniated disc. Pet.'s Brief, pp. 3 & 4 (Docket No. 13). The ALJ did not disagree, unequivocally recognizing as much in his June 9, 2006 Decision. (AR 12 & 13 ('The claimant's MRI scan showed substantial disc protrusion.")) However, the ALJ did not consider the MRI in isolation, as Petitioner appears to advocate. That is, although it was initially recommended that Petitioner undergo surgery for her back, she decided against it; two weeks before the scheduled surgery, Petitioner reported significant improvement of her condition.[2] On April 3, 2000, Petitioner's treating physician, Dr. Cynthia Hahn, recorded in her treatment notes:

> I just spoke to Louise Touliatos. The pain down her leg has gone away and she is becoming more active and has minimal back pain and is really feeling quite good. She is taking minimal pain medicine. She states she can squat and bend over and is very "ecstatic."
>
> She asked me about whether she should proceed with surgery. Given the marked improvement very recently and rapid improvement in her symtomatology I think we should cancel surgery at this time. I have cautioned her that given the large size of her ruptured disc it is quite possible that she will have recurrent symptoms and subsequently require surgery. However, if she is getting over her pain and has no weakness and she does not have any bladder problems I would recommend holding off on surgery and following her in the office in two months.
>
> The patient is very happy with this decision. We will see her back in the office in two months. I have asked her to call should her pain recur and we will be happy to see her earlier.

(AR 128).

---

[2] Petitioner's briefing fails to acknowledge these realities, pointing only to treatment notes that preceded this apparent improvement in her condition. Pet.'s Brief, p. 4 (Docket No. 13). While Petitioner is quick to acknowledge that, as of March 2000, she needed an L5-S1 microdiscectomy, her briefing ignores the subsequent improvement of her condition that apparently obviated the need to ultimately undergo surgery.

**MEMORANDUM DECISION AND ORDER - 8**

Subsequent treatment notes from Dr. Robert E. Rust, Jr. indicate that Petitioner, while experiencing intermittent symptoms of pain, was never considered functionally disabled during the relevant period of inquiry - quite the opposite, actually. For example:

- On October 25, 2000, Dr. Rust noted that Petitioner "<u>is doing pretty well</u>" (AR 146);

- On January 10, 2001, Dr. Rust observed "<u>no obvious erythema, swelling or crepitation</u>" in Petitioner's spine. (AR 147). Moreover, Dr. Rust found Petitioner to have "<u>full [range of motion] of upper/lower extremities</u>" and "<u>[single leg raise] without difficulty</u>." *Id.*

- On November 30, 2001, Dr. Rust noted that Petitioner was "<u>doing well</u> on her Norco" and "<u>seems to be getting a fair amount of relief</u> also from the Celebrex" (AR 149);

- On February 22, 2002, Dr. Rust noted that Petitioner was again "<u>doing well</u>" and "has had no escalation of med use" (AR 150);

- Although Petitioner experienced a slight increase in pain around April 22, 2002, Dr. Rust later noted on August 12, 2002 that Petitioner "has not changed her use of medicine," that "<u>[the increased dosage] is working fine for her</u>," that "<u>she is stable and requires no change</u>," and that "<u>she continues to be functional based on the use of her narcotic</u> . . . ." (AR 150 & 151); and

- On November 4, 2002, Dr. Rust noted that Petitioner was "<u>doing well on current meds;</u>" "<u>doesn't want to change;</u>" and "<u>seems stable</u>." (AR 152).

Equally telling is Dr. Rust's January 2006 evaluation of Petitioner's neck, back, and hip. (AR 186 & 187). Following his physical examination of Petitioner, Dr. Rust concluded:

> In answer to your specific questions, I see that she has ability to do work-related activities such as sitting, standing, walking, lifting to some degree probably not over 10 or 15 pounds. Carrying and handling objects and hearing are not an issue. Speaking and traveling are not an issue. The overall impression of this patient is she would be able to accomplish sedentary occupations.

(AR 187). Therefore, in Petitioner's treating physician's own words, she is not disabled as that word is defined by the applicable regulations. While Petitioner argues that Dr. Rust's subsequent evaluation fails to acknowledge his treatment history with Petitioner and, as a result,

**MEMORANDUM DECISION AND ORDER - 9**

is one-sided and without foundation (*see* Pet.'s Brief, p. 5 (Docket No. 13)), this Court is not in a position (nor is it even capable) to second-guess a learned practitioner's medical opinion regarding Petitioner's physical condition and corresponding capabilities.  Indeed, Dr. Rust appears to be the appropriate individual for making such an opinion given that very history.

Thus, it cannot be said that the ALJ disregarded Petitioner's medical history when the ALJ considered both Petitioner's treating physicians' treatment notes (before and after Petitioner's February 2000 MRI), as well as those treating physicians' actual opinions concerning Petitioner's level of disability.  For these reasons, it would be incorrect to state that the ALJ's findings are without justification.  The record supplies substantial evidence of the legitimate reasons supporting the ALJ's decision in this respect which the Court is not in a position to interfere.

      2.      <u>Petitioner's Onset Date of Her Alleged Disability</u>

Petitioner additionally claims that the ALJ failed to follow SSR-83-20 in determining the onset date of her alleged disabling impairment.  Pet.'s Brief, pp. 6-8 (Docket No. 13).  More to the point, Petitioner argues: "Petitioner was and continues to be at listing level . . . .  If onset was unclear to the ALJ, the ALJ should have called 'on the services of a medical adviser when onset must be inferred.'" *Id*. at p. 7.  Petitioner's position in this respect is misplaced.

First, Petitioner's argument presumes a finding of a listed level of disability given that an onset date logically accompanies a finding of disability.  Here, however, the ALJ found that Petitioner did not meet or equal a listing.  *See supra* at pp. 7-10.  Petitioner's insistence that the ALJ needed a medical expert to determine her onset date "[i]n light of the severe nature of [her] disc hern[i]ation, the recommendation for surgery, and five year treatment for chronic pain" (*see*

**MEMORANDUM DECISION AND ORDER - 10**

Pet.'s Brief, p. 8 (Docket No. 12)) overlooks the fact that, according to the ALJ, there is no listed level of disability from which an onset date can be assigned or is even necessary.[3]

Second, and more fundamentally, even when assuming the need to determine an onset date, there is no indication that the hypothetical onset date was unclear to the ALJ. Based on the record and the testimony offered at the April 26, 2006 hearing, the ALJ was able to reasonably infer, without the need of a separate medical advisor, that Petitioner's back impairment occurred prior to the (1) date of the first recorded medical examination or (2) the date Petitioner stopped working - therefore prior to her date last insured. (AR 12 & 13).

Whether an onset date existed and, if so, the particular onset date, is immaterial and/or inconsequential toward challenging the ALJ's finding of no disability in this case. Therefore, the ALJ's findings will not be disturbed on this basis alone.

3.      Petitioner's Credibility

Petitioner finally takes issue with the ALJ's failure to properly consider her testimony surrounding her alleged chronic pain. Pet.'s Brief, p. 8 (Docket No. 13). The ALJ is in the best position to make such credibility determinations and, for this reason, the ALJ's credibility determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). However, although the ALJ is responsible for determining Petitioner's credibility, she cannot reject her testimony without giving clear and convincing reasons. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

---

[3] In this respect, Petitioner again focuses on the fact that Petitioner was slated for a microdiscectomy, only to conveniently disregard the fact that her surgery was later cancelled due to her improving condition. Petitioner cannot have it both ways; she cannot pick and choose the facts that support her position to the exclusion of other, later, opposing, facts.

**MEMORANDUM DECISION AND ORDER - 11**

1998)).  Here, the ALJ provided sufficient reasons for calling into question Petitioner's credibility.

Notwithstanding Petitioner's testimony, the ALJ highlighted evidence suggesting that Petitioner may not have been entirely objective during the April 26, 2006 hearing.  For example, despite Petitioner's alleged chronic pain, she apparently (1) requested that a milder pain reliever be prescribed in May 2000 (AR 146); (2) was doing "mudding and taping of drywall" in January 2001 (AR 131); (3) "moved a bunch of stuff out of a shed into a newly remodeled building" in February 2001 (AR 133); and (4) "stacking a whole log truck worth of firewood" in May 2001 (AR 134).  Moreover, in looking at Petitioner's Daily Activity Questionnaires (AR 60-76), the ALJ contrasted Petitioner's apparent ability to cook, clean, put out clothes for and pick up after her husband, do the family's laundry, walk the dog, and go shopping (AR 60) against Petitioner's testimony regarding chronic pain and nausea.[4]  According to the ALJ, the fact that Petitioner is capable of performing a number of activities weighs against the persuasiveness of

---

[4]  Moreover, in response to a question posed by her counsel, Petitioner described an average day as follows:

> So I – so anyway my – the fellow that's taking care of my financial needs, I draw honey for him.  Sometimes that I can – like crates of honey, and I'll have a day that I can draw up maybe two crates, which would be 64 one-pound bottles.  Maybe two crates.  That would be 24 bottles of two-pound honey bears, and three pounds.  I'm quitting doing the six-pounders, and the 12-pounders, but I've got like the day to fill these.  To go and sit in front of the honey tank, and with the scale in front of you.  And you just – you set it, and you watch the honey flow in, and you turn it off, and put the lid on, and then you put them up on a shelf, and put labels on them.  So I'll do that throughout the day.

(AR 234 & 235).

**MEMORANDUM DECISION AND ORDER - 12**

her testimony.  (AR 15).  The ALJ appropriately incorporated these realities when he questioned Petitioner's credibility.

Together, these reasons offer clear and convincing explanations as to why the ALJ did not find Petitioner's testimony entirely credible.  This is not to say, however, that this Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations or that Petitioner does not suffer from chronic pain; indeed, as expected, Petitioner identifies conflicting evidence in support of her position.  While such conflicting evidence may not have been given the weight Petitioner would have preferred, it is clear that the ALJ's decision to doubt Petitioner's credibility in denying disability benefits is not without clear and convincing reasons for doing so.  As required by controlling law, the ALJ will not be second-guessed here.  *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." (Internal citations omitted)).  Therefore, the Court will not substitute its judgment when the evidence in the record can support the ALJ's findings.

## IV.

## CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

**MEMORANDUM DECISION AND ORDER - 13**

I am of the opinion that the evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation.  In fact, if I had been the finder-of-fact, I may well have reached a different conclusion; but that is not the function of a federal judge reviewing a Social Security determination.

Accordingly, the ALJ's decisions as to Petitioner's credibility, as well as the ALJ's consideration of Petitioner's obesity and depression, were based on proper legal standards and supported by substantial evidence.  Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

## V.

## ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.



DATED: **March 7, 2008**.

_____
Honorable Larry M. Boyle
United States District Court

**MEMORANDUM DECISION AND ORDER - 14**